IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JIMMY LOYD BROWN,                §
                                 §
            Petitioner,          §
                                 §
v.                               §          No. 4:19-CV-547-Y
                                 §
LORIE DAVIS, Director,           §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
            Respondent.          §


## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 filed by Petitioner, Jimmy Loyd Brown,
a state prisoner, against Lorie Davis, director of the Texas
Department of Criminal Justice, Correctional Institutions Division,
Respondent. After having considered the pleadings and relief sought
by Petitioner, the Court has concluded that the petition should be
denied.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner was indicted in Palo Pinto County, Texas, Case No.
15327, for delivery of a controlled substance, methamphetamine, to
a minor in an amount of less than one gram. (Clerk's R. 27, doc.
19-13.) On May 7, 2015, a jury found Petitioner guilty of the
offense, Petitioner pleaded true to the sentence-enhancement
allegations in the indictment, and the trial court assessed his

punishment at 65 years' imprisonment. (Id. at 110.) Petitioner appealed his conviction, but the state appellate court affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Electronic R., doc. 19-11.) Petitioner also filed a post-conviction state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order. (SHR 3-24 & Action Taken, docs. 19-26 & 19-23, respectively.[1])

The state appellate court summarized the facts of the case as follows:

> Wes Corzine is the principal of Graford Elementary School. He testified that Graford Elementary School and Graford High School share some of the same facilities, including restrooms. On April 4, 2014, he saw a plastic baggie lying in the hallway outside of the boys' restroom. Corzine picked up the baggie and observed that it contained clear "rocks" with some powdery residue. Corzine was suspicious of the contents of the baggie. He transported the baggie and its contents to his office, and he contacted Constable Marc Moon to investigate the matter further. While waiting on Constable Moon to arrive at the school, Corzine reviewed surveillance video from the hallway. Corzine was able to determine from the video that the baggie fell out of the pocket of J.P., a high school student.
>
> Constable Moon suspected that the baggie contained methamphetamine. He contacted Investigator Job Espinoza of the City/County Narcotics Unit to bring a presumptive drug test kit to the school to test the contents of the baggie for methamphetamine. Constable Moon also confirmed from the surveillance video that J.P. was the person that dropped the baggie. After interviewing J.P. at the

---

[1]"SHR" refers to the record of Petitioner's state habeas proceeding in WR-86,727-01. Because the record is not paginated, the pagination in the ECF header is used.

school, Constable Moon transported him to a magistrate so that a formal statement could be taken from J.P. Based upon the information obtained from J.P., Constable Moon obtained an arrest warrant for [Petitioner].

Investigator Espinoza is the senior narcotics officer for the City/County Narcotics Unit. He testified that the presumptive test that he performed on the contents of the baggie was positive for the presence of methamphetamine. Subsequent testing of the contents of the baggie at the DPS Crime Laboratory in Abilene revealed that the substance weighed 0.45 grams and that it contained methamphetamine.

J.P. was sixteen on April 4, 2014, and he was a freshman at Graford High School at the time. J.P. testified that he saw [Petitioner] on the previous day. When asked what had caused J.P. to see [Petitioner] that day, J.P. replied, "[I] [t]exted him and told him I had money and to come pick me [up] to get some drugs. And he came and picked me up and left me at a gas station." Specifically, J.P. testified that he had eighty dollars and that he wanted [Petitioner] to get him methamphetamine. The prosecutor asked J.P., "Now, how did you know to call [Petitioner]?" J.P. replied, "Because I dealt with him several times before."

J.P. testified that [Petitioner] picked him up at his house and transported him to a closed business in Palo Pinto County. [Petitioner] returned fifteen minutes later with a gram of methamphetamine that he delivered to J.P. J.P. testified that he gave a "bump" of the methamphetamine to [Petitioner] for [Petitioner]'s use. [Petitioner] then transported J.P. back home. J.P. took the remaining methamphetamine to school the next day. J.P. and some of his friends snorted a portion of the methamphetamine at school prior to J.P. dropping the methamphetamine in the hallway.

(Mem. Op. 2-3, doc. 19-4.)


## II. ISSUES

Petitioner asserts that his rights under the United States Constitution were violated on the following grounds:

3

(1)   his trial counsel was ineffective by allowing the
      prosecution to bolster witness testimony "with out
      of evidence testimony";

(2)   the evidence was insufficient as to an element of the
      charge;

(3)   the trial court abused its discretion by allowing
      an officer to present "expert witness" testimony
      that was irrelevant to the charged offense;

(4)   his trial counsel was ineffective by failing "to carry
      objection to conclusion allowing 'others' to testify
      without being present"; and

(5)   his trial counsel "through numerous ineffective errors
      abandons his client."

(Pet. 6-8; doc. 1.[2])

### III. RULE 5 STATEMENT

Respondent believes that Petitioner has sufficiently exhausted
his state-court remedies as to the claims raised and asserts that
the petition is neither barred by limitations nor subject to the
successive-petition bar. (Resp't's Answer 5-6, doc. 17.)

### IV.   STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened
standard of review provided for in the Anti-Terrorism and Effective
Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ
of habeas corpus should be granted only if a state court arrives at
a decision that is contrary to or an unreasonable application of

---

[2]Because a page, which is not paginated, is inserted into the form
petition, the pagination in the ECF header is used.

clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Id.* § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption of correctness applies to both express and implied findings of fact. *Valdez v. Cockrell,* 274 F.3d 941, 948 (5th Cir. 2001). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained

decision to the last related state-court decision providing"
particular reasons, both legal and factual, "presume that the
unexplained decision adopted the same reasoning," and give
appropriate deference to that decision. *Wilson v. Sellers,* 138 S.
Ct. 1188, 1191-92 (2018). If there is no related state-court
decision providing the courts' reasoning, a federal court may imply
fact findings consistent with the courts' disposition of the
claims, assume that the state courts applied the proper clearly
established federal law to the facts of the case, and then
determines whether its decision was contrary to or an objectively
unreasonable application of that law. 28 U.S.C.A. § 2254(d)(1);
*Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006); *Valdez v.
Cockrell,* 274 F.3d 914, 948 n.11 (5th Cir. 2001). A federal court
defers to and accepts a state court's interpretation of its own
law, unless that interpretation violates the United States
Constitution. *Creel v. Johnson,* 162 F.3d 385, 391 (5th Cir. 1998).

## V. DISCUSSION

### A. Ineffective Assistance of Counsel

Under his first, fourth, and fifth grounds, Petitioner claims
that he received ineffective assistance of trial counsel. (Pet. 6-
8, doc. 1.) A criminal defendant has a constitutional right to the
effective assistance of counsel at trial. U.S. CONST. amend. VI,
XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v.*

6

*Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

7

Petitioner claims his trial counsel, Tim Ford, was ineffective—

→    by allowing the prosecution to bolster witness testimony "with out of evidence testimony";

→    by failing "to carry objection to conclusion allowing 'others' to testify without being present"; and

→    "through numerous ineffective errors" abandoning him.

(Pet. 6-8, doc. 1.)

As to the first two claims, Petitioner asserts that the prosecution bolstered J.P.'s testimony by eliciting the following hearsay testimony from the school principal, Wes Corzine, and using the testimony during closing argument:

Q.   -- you were asked if you were familiar with the defendant here, and your response was you'd heard his name. In what context had you heard his name?

A.   *I heard his name from other parents at my school. Just -- you know, bad guy, you know, just provides -- has been rumored to provide drugs to others and just not looked upon favorable.*

Q.   *Had you ever received any complaints from parents about the defendant?*

[Counsel]: I'm going to object at this point. I think we're getting into some extraneous stuff that's not admissible.

[Prosecutor]: The door is wide open. They opened the door on -- asked him if he knew him and --

[Counsel]: I asked him if he knew [Petitioner] and is connected to this case.

[Prosecutor]: Well, I'll have no further questions.

[The Court]: It's also hearsay, what somebody

8

else said.

(Reporter's R., vol. 7, 40-41, doc. 19-20 (emphasis added).) During

closing argument, the prosecutor stated:

> And it boils down to do you believe [T.P.] or not?
> If you don't, then find [Petitioner] not guilty. But I
> submit to you folks, this kid was -- came across about as
> sincere as they could -- as he could be.
>
> *And what else tends to show that he might be telling
> the truth? Mr. Corzine said they'd been getting
> complaints from parents about this defendant, same kind
> of conduct. Kind of lends a little ring of truth to what
> [T.P] was saying here*.

(Id. at 134 (emphasis added).) Petitioner asserts that counsel was

ineffective by failing to "make the proper objection or carry such

objection to a conclusion," move for a mistrial, move to strike the

testimony from the record, or request a curative jury instruction.

(Pet'r's Mem. 4-5, 8-10, doc. 3.)

The state habeas judge, who also presided at trial, conducted

a hearing by affidavit, and, to the extent raised in Petitioner's

state  habeas  application,  trial  counsel  responded  to  the

allegations in an affidavit as follows:

> [O]bjections were made throughout the trial and ruled
> upon immediately by the Court. In the Court's charge to
> the jury, the jury was instructed that what the attorneys
> say during closing arguments is not evidence.
>
> [T]he jury charge for guilt innocence and the jury charge
> for punishment informed the jury that what the lawyers
> say during opening statements and closing arguments is
> not evidence. Affiant is not sure what is meant by
> [Petitioner]'s  statement  saying  that  the  District
> Attorney bolstered the testimony of State's witnesses.
> The record indicates that the District Attorney informed
> the jury during opening statements what he thought the

9

evidence would show and informed the jury what was
testified to during the trial by the State's witnesses
and reasonable deductions from the evidence presented
during closing arguments.

(SHR 43-44, doc. 19-27.)

Based on counsel's affidavit, the documentary record, and his
own recollection of the trial proceedings, the state habeas judge
expressly found that trial counsel was not ineffective and the
Texas Court of Criminal Appeals denied relief without written
order. (Id. at 42.) To the extent more particularized findings were
not made by the trial court, this Court may imply factual findings
consistent with the state courts' disposition and, absent any
evidence that incorrect standards were applied, assume that the
state courts applied the *Strickland* standard when considering the
claims.

Relying on the presumptive correctness of the state courts'
express and implied factual findings, and having independently
reviewed Petitioner's claim in conjunction with the state-court
records, the state courts' application of *Strickland* is not
objectively unreasonable under the doubly-deferential standard
applied to such claims. Even if Petitioner could establish
deficient performance, which he has not, the jury accepted the
testimony of J.P. regarding the identity of the person who
delivered the methamphetamine to him and rejected the defensive
theory that Petitioner was not involved. Under these circumstances,
Petitioner cannot establish prejudice—*i.e.,* that Corzine's

10

testimony had a substantial and injurious effect or influence in determining the jury's verdict. *See Taylor v. Cain,* 545 F.3d 327, 307 (5th Cir. 2003); *Hughes v. Quarterman,* 530 F.3d 336, 345 (5th Cir. 2008). For the same reason, Petitioner cannot show any prejudice attendant to counsel's failure to "make the proper objection or carry such objection to a conclusion," move for a mistrial or to strike the testimony from the record, or request a curative jury instruction. *See Galvan v. Cockrell,* 293 F.3d 760, 766 (5th Cir. 2002); *Harris v. Warden, Louisiana State Penitentiary,* 152 F.3d 430, 439, 440 n.11 (5th Cir. 1998).

Further, juries are presumed to follow the instructions of the presiding judge, and Petitioner presents no evidence in an effort to show that the jury did not follow instructions in this case. *See Zafiro v. United States,* 506 U.S. 534, 540 (1993) (noting that a potential risk of prejudice can be cured with proper instructions, and that "juries are presumed to follow their instructions" (internal quotation marks and citation omitted)). Therefore, he has not established that the prosecutor's complained-of closing argument was considered by the jury to be evidence and therefore crucial to the jury's decision-making process.

Under his final claim, Petitioner asserts that counsel "abandoned" him "through various ineffective grounds," presented no no evidence in rebuttal to the state's evidence, and advised the jury to find him guilty. (Pet. 8-12, doc. 1, Pet'r's Mem. 10-14.)

Petitioner asserts a laundry list of alleged "instances" of deficient performance by counsel "making up one whole within the ineffective assistance clause" of *Strickland*, without demonstrating how the alleged errors were constitutionally deficient or any specific prejudice. Therefore, the claims are conclusory and do not raise a constitutional issue in a federal habeas proceeding. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

Petitioner asserts that counsel failed to present evidence of "not-guilty" and, instead, attempted "to use evidence 'not presented or in the record' as some type of proof that his client isn't guilty." (Pet'r's Mem. 13, doc. 3.) According to Petitioner, once the state met its burden of proof,

> the burden then transfers to defense, and counsel had no evidence to present, no mitigating evidence, no physical evidence and no trial strategy that would allow him to argue in the defensive.

(Pet'r's Mem. 13, doc. 3.)

However, Petitioner fails to point to any favorable evidence that was known or could have become known to counsel at the time of his trial. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross,* 694 F.2d at 1011.

Lastly, Petitioner asserts counsel advised the jury to find

him guilty. (Pet. 8, doc. 1; Pet'r's Mem. 14, 3.) Counsel responded to this claim in his affidavit as follows:

> [D]uring closing argument from defense counsel, after defense counsel had informed the jury as to what evidence was not there and not believe the testimony of [J.P.] and he didn't obtain the methamphetamine from [Petitioner], counsel requested the jury find [Petitioner] guilty and immediately realized what he had said and informed the jury "I mean not guilty, sorry, you know what I mean. None of the argument from defense counsel was for a guilty verdict. All of the argument and all of the evidence presented by defense counsel was for not guilty."

(SHR 44, doc. 19-27.)

Clearly, counsel's misstatement was an oral lapse and promptly corrected. Petitioner presents nothing to suggest that the jury was in any way confused as to the salient details of counsel's argument. The Court reemphasizes that such bald assertions do not raise a constitutional issue in a federal habeas proceeding.

In summary, Petitioner has not demonstrated deficient performance or shown any reasonable probability that the outcome of his trial would have been different but for counsel's alleged deficiencies. He is not entitled to relief under grounds one, four, or five.

**B. Sufficiency of the Evidence**

Under his second ground, Petitioner claims that the evidence was insufficient to prove the element of delivery because there was no evidence connecting him to the methamphetamine other than J.P.'s uncorroborated testimony and the lab report naming Petitioner as

13

the "possessor of the substance." (Pet. 6, 11-13, doc. 1; Pet'r's Mem. 5-6, doc. 3.)

Federal habeas review of a legal sufficiency claim is extremely limited. The inquiry in a legal-sufficiency analysis requires only that a reviewing court determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). In conducting a *Jackson* review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution, with all reasonable inferences to be made in support of the jury's verdict. *United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997); *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). Where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

In Texas, it is an offense if a person knowingly delivers a controlled substance by actual transfer or constructive transfer to a person who is a child. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.122 (West 2017). Based on the evidence adduced at trial, the state appellate court, applying the *Jackson* standard, addressed the claim as follows:

> [Petitioner] focuses his third issue on his challenge to the sufficiency of the evidence that was asserted in his motion for directed verdict. [Petitioner]

14

essentially contends that J.P.'s testimony identifying [Petitioner] as the source of the methamphetamine was too weak to support [Petitioner]'s conviction. He argues that J.P. had a "troubled life," used drugs, and was a poor student at school. He also asserts that there was no other evidence other than J.P.'s testimony identifying [Petitioner] as the source of the methamphetamine that J.P. dropped in the school hallway.

As noted previously, [Petitioner] also asserted a contention in support of his motion for directed verdict that J.P. was an accomplice and that his testimony was not sufficiently corroborated. This appeared to be a reference to the corroboration requirement of TEX. CODE CRIM. PROC. ANN. art. 38.14 . . . . As correctly noted by the trial court, J.P. was not an accomplice because the "recipient" in a drug delivery offense is not an accomplice as a matter of law under *Rodriguez v. State,* 104 S.W.3d 87, 91–92 (Tex. Crim. App. 2003), a case that also involved the offense of delivery of a controlled substance to a minor. While [Petitioner] asserts on appeal that "[t]here was no corroboration of [J.P.'s] identification from any other source," he has not presented a claim on appeal under Article 38.14. J.P. testified that [Petitioner] delivered the methamphetamine to him that he dropped in the school hallway. J.P. detailed the specifics of the transaction that occurred on the previous day, including how he contacted [Petitioner], the amount that he paid for the methamphetamine, the amount of the drug that he purchased, and the location where the delivery occurred. This transaction was not an isolated incident because J.P. testified that he had dealt with [Petitioner] several times before. J.P.'s testimony concerning the source of the methamphetamine was inherently a matter of credibility that the jury was required to resolve. Under the applicable standard of review, the jury was the sole judge of J.P.'s credibility, and we defer to that determination. . . . Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of the alleged offense beyond a reasonable doubt.

(Mem. Op. 4-5, doc. 19-4.)

The state court's application of *Jackson* was not objectively unreasonable. The jury retains the sole authority to judge the

15

credibility of the witnesses and decide how much weight should be given to their testimony. *United States v. Layne,* 43 F.3d 127, 130 (5th Cir. 1995). Deferring to the state courts' conclusion that J.P. was not an accomplice to the offense as defined by state law, no corroboration of his testimony was necessary. Therefore, even if J.P.'s testimony was the only evidence against Petitioner, the claim is meritless. It is clear that J.P. may not have been the most pristine witness, however the jury chose to believe his testimony and to convict Petitioner. Petitioner is not entitled to relief under ground two.

### C. Abuse of Discretion

Under his third ground, Petitioner claims that the trial court abused its discretion by allowing "an officer to present 'expert witness' testimony that was not relevant to the charged offense." (Pet. 7, doc. 1.) Specifically, Petitioner objects to Constable Moon's testimony regarding the effects of methamphetamine on a 5-year-old. (Pet'r's Mem. 7-8, doc. 3.)

The state habeas court found that, save for Petitioner's ineffective-assistance-of-counsel claims, all grounds raised in his state habeas application either were or could have been raised on direct appeal. (SHR 42, doc. 19-27.) This claim was not raised on direct appeal. The Texas Court of Criminal Appeals has repeatedly held that claims that could have been raised on direct appeal, but were not, may not be raised for the first time in a state habeas

16

petition. *See Ex parte Gardner,* 959 S.W.2d 189, 199-200 (Tex. Crim. App. 1998). Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Ylst v. Nunnemaker,* 501 U.S. 797, 802-04 (1991); *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997).

The state habeas court clearly relied upon a firmly established and regularly followed state procedural rule to recommend denial of this claim. *See Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005); *Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal"). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the claim is procedurally barred from this court's review. *See Coleman,* 501 U.S. at 750.

## VI. Conclusion

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, Federal Rule of Appellate Procedure 22 provides that

17

an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may issue "only if the [Petitioner] has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When the district court denies the petition on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack,* 529 U.S. at 484). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of Petitioner's

constitutional claims and/or procedural rulings. Therefore, a certificate of appealability should not issue.

      SIGNED June <u>4</u>, 2020.

                             _____
                             TERRY R. MEANS
                             UNITED STATES DISTRICT JUDGE

Counsel stated during voir dire by stating:

> We've made reference to this, but I want to take it just a little bit further. You understand, and Mr. Burns told you, that the State has the absolute burden of proving this case, all right?

> What that means on the flip side is I don't have to do anything. I don't have to cross-examine any witnesses. I don't have to make any statements. I don't have to make any objections. I don't have to call any witnesses. I don't have to do anything. The burden is absolutely completely on the State.

> The last time I was up here, the lady in the back, she stood up and she said: Mr. Ford, I think if you were sitting by me and I was in trouble, I'd want you to say a few things.

> Well, I'm probably going to do that. But understanding the law states I don't have to do anything. Not a thing. The burden is completely on them.

> So anybody -- show of hands or numbers. Anybody would require us, Mr. Brown or myself, to do something during this trial other than just sit there and sit on our hands?

> Because that's all we have to do. If you can follow that, that's what we're asking. If you can't, it's okay. We just need to know about it.

(Reporter's R., vol. 6, doc. 19-19.)

Counsel responded to the allegations in an affidavit, in which

he stated:

> When this case went to trial, Thomas Zinn Brown (TZB) was appointed to represent [Petitioner] (no relation). TZB worked at this office at the time and requested my help with the jury trial.

> I have read through [Petitioner]'s ineffective assistance of counsel allegations and will respond to them in the chronological order they appear.

Pertaining to Ground #2, [Petitioner] instructed affiant that the drugs that Joseph Potts possessed were not given to Joseph Potts by [Petitioner] so anything the lab report indicated did not matter to the defense. The strategy was determined with TZB and [Petitioner] to not object to anything about the substance because [Petitioner] never handled the substance and it did not matter if an expert testified as to its substance.

Pertaining to Ground #3, does not make any sense to affiant from the standpoint that TZB nor affiant did not represent Joseph Potts. From a legal standpoint, that issue does not pertain to [Petitioner].

Pertaining to Ground #4, [Petitioner] indicates in his document that he believes that it was adequately proven that Joseph Potts was an accomplice to the crime. During the trial, the defense never admitted that Joseph Potts was an accomplice to possessing the methamphetamine. Had the defense admitted that Joseph Potts was an accomplice, that would have had [Petitioner] admitting to possessing and delivering the methamphetamine. The fact that [Petitioner] said he didn't possess or deliver any methamphetamine to Joseph Potts was the theory of the defense along with [Petitioner].

Pertaining to Ground #5, the evidence presented by the State at trial was a security tape from Graford ISD showing a baggie containing a controlled substance , containing methamphetamine drop from the front pant pocket of Joseph Potts. Joseph Potts testified that he received the methamphetamine from [Petitioner] prior to taking it to school. Obviously the jury believed Joseph Potts was a credible witness.

Pertaining to Ground #6, the jury charge for guilt innocence and the jury charge for punishment informed the jury that what the lawyers say during opening statements and closing arguments is not evidence. Affiant is not sure what is meant by [Petitioner]'s statement saying that the District Attorney bolstered the testimony of State's witnesses. The record indicates that the District Attorney informed the jury during opening statements what he thought the evidence would show and informed the jury what was testified to during the trial by the State's witnesses and reasonable deductions from the evidence presented during closing arguments.

21

Pertaining to Ground #7, Constable Moon testified that through his training and experience of years of law enforcement and working many cases involving methamphetamine, the effects that methamphetamine has on a person. The Court determined that he was qualified to testify to that information. Further, [Petitioner] and the defense stated that the methamphetamine that Joseph Potts dropped at Graford School was not obtained from [Petitioner].

Pertaining to Ground #8, during closing argument from defense counsel, after defense counsel had informed the jury as to what evidence was not there and not believe the testimony of Joseph Potts and he didn't obtain the methamphetamine from [Petitioner], counsel requested the jury find [Petitioner] guilty and immediately realized what he had said and informed the jury "I mean not guilty, sorry, you know what I mean. None of the argument from defense counsel was for a guilty verdict. All of the argument and all of the evidence presented by defense counsel was for not guilty.

(SHR 43-44, doc. 19-27.)

Applying the *Jackson* standard, the appellate court addressed the Petitioner raised this claim on appeal, however the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).